UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 13 |
| | : | |
| DONALD N. SCHLUPP, | : | Bankruptcy No. 05-16879DWS |
| | : | |
| Debtor. | : | |

# MEMORANDUM OPINION

**BY: DIANE WEISS SIGMUND, Chief Bankruptcy Judge**

Before the Court are (1) the Motion for Relief from Automatic Stay filed by Mira P. Chanin and Leonid Rubarich ("Stay Motion") and (2) the Motion to Dismiss of Select Portfolio Servicing, Inc. ("Dismissal Motion") (together the "Motions"). An evidentiary hearing was held on July 19, 2005 after which the Court asked for a memorandum from the Debtor since based on the record made, I knew of no colorable legal basis for opposition to the Motions. The pleading was filed on July 26, 2005 and replies from the movants were lodged on July 29, 2005. The contested matters are therefore ripe for decision.

**BACKGROUND**

Debtor and his wife are serial Chapter 13 filers with a total of six bankruptcy cases filed between them since July 13, 2000. The history of their unsuccessful bankruptcy experiences is as follows:

Case 1 (00-18768BIF), filed by Mrs. Schlupp a day before the sheriff sale on July 14, 2000, was dismissed on August 14, 2001 for failure to make plan payments to the Chapter 13 trustee. The mortgagee had sought relief from stay for non-payment of the mortgage and a settlement stipulation had been entered. Mr. Schupp, who was involved and familiar with her filings, had no recollection of any motions for relief by the trustee or mortgage company. The debtor was represented by Alan B. Liss, Esquire. Exhibit B-1.

Case 2 (02-15284BIF), filed by Mrs. Schlupp on April 9, 2002 to stay an impending sheriff sale on April 12, was dismissed on October 22, 2002 for failure to make plan payments and propose a feasible plan. The mortgagee sought and was granted relief from the automatic stay. Mr. Schlupp does not recall any motions by the trustee and believes the mortgage company caused the failure of this case in which he acknowledged no mortgage payments were made. The debtor was represented by William Habib, Esquire. Exhibit B-2.

Case 3 (03-12227BIF), filed by Mrs. Schlupp on February 13, 2003 because in Mr. Schupp's own words, he had no choice as the next sheriff's sale was on February 14, 2003, was dismissed on February 24, 2004 for failure to make plan payments and propose a confirmable plan. The mortgagee brought a motion for relief but the case was dismissed before the matter could be heard. The debtor was represented by Mr. Habib again. Exhibit B-3.

Case 4 (04-19489DWS) filed by Mr. Schlupp on July 9, 2004, also to stay a sheriff's sale, was dismissed on December 2, 2004 on the trustee's motion for failure to appear at the § 341 meeting and failure to make plan payments. He doesn't recall receiving any

notices from the court.  Debtor was represented by Joseph Diorio, Esquire ("Diorio") who Debtor contends advised him not to make any payments but rather to use the petition merely to stop the sale.  According to Debtor since "his plans were not working," he just stopped making payments.  Exhibit B-4.

Case 5 (04-33626BIF) filed by Mrs. Schlupp on October 4, 2004 during the pendency of Mr. Schlupp's case, was quickly dismissed on November 8, 2004 due to her failure to file the required documents.  She was represented by Mr. Diorio.  Exhibit B-5.

This case, number 6 (05-16879DWS) was filed by Mr. Schlupp pro se on May 13, 2005.  The petition is time stamped as filed at 12:27 p.m.  Exhibit B-8.  According to the testimony of Myra Chanin, the residential real estate owned by Mr. and Mrs. Schlupp in Richboro, Pennsylvania (the "Property") and which has been the raison d'etre of all these bankruptcy filings, was sold at sheriff's sale on May 13 at 11:25 a.m.[1]  Ms. Chanin and Leonid Rubin ("Buyers") paid a deposit of $40,200 on May 13, 2005 and the purchase price balance of $361,800 on May 20, 2005.  Exhibit B-9.

In anticipation of this sale, Diorio had a pending motion in the Bucks County Court of Common Pleas ("State Court") to seek a stay and told Mr. Schlupp not to worry.

---

[1] Debtor contends that I should not accept Ms. Chanin's testimony but rather leave this issue until trial of his adversary case where it will be clear what time the Property was really sold.  Debtor's Memorandum of Law In Opposition to Motion ("Debtor's Memo") at 4.  I find this argument specious.  First, Ms. Chanin was a credible witness whose testimony I accept without reservation.  Second, if Debtor intended to refute her recollection, as counsel well knows, the time to do so was at the hearing at which it was a critical issue and not some time in the future.  I can only assume there was no controverting evidence on this point.

-3-

However, he was unsuccessful.[2] Mr. Schlupp recalls being contacted by Diorio at 10:35 a.m. and advised to go to the bankruptcy court and file a new petition. He awaited a fax from Diorio's office with a blank petition and then traveled from his place of employment in Bristol to the courthouse in Philadelphia where he recalls arriving at 11:40 a.m. While he acknowledges (as he must since it is time stamped on the petition) a filing at 12:27 p.m., he claims that he was delayed by the metal detector, the need to fill out papers[3] and the wait to present his documents to the Clerk as he was third in line. Thereafter, his calls to Diorio were unanswered, and he contacted his next counsel Joseph Waters, Jr. who entered a brief appearance and withdrew in favor of present counsel David A. Scholl, Esquire.

On May 27, 2005 the Stay Motion was filed by Buyers who had purchased the Property at the May 13 sheriff's sale and have been prevented from obtaining a deed to the Property as a result of the bankruptcy stay of the latest case. On June 6, 2005 the Dismissal Motion was filed by Select Portfolio Servicing, Inc. ("SPS"), as servicing agent for the mortgagee[4] who has been stayed from receiving the sale proceeds from the sheriff for the same reason the deed has not issued. Both Motions were scheduled for hearing on July 19.

---

[2] No one asked the Debtor what grounds he presented to the State Court to support his request that a stay be granted.

[3] The record shows three hastily filled out documents: the two page petition containing name, address and social security number and one of his prior case numbers; the statement of social security number containing name and social security number and the pro se statement containing his name. He testified that he was assisted by an attorney in getting the prior case from the court's computer.

[4] Both parties refer to SPS as if it were the mortgagee and I shall do likewise.

On July 18 Debtor responded by filing an adversary action against Buyers and SPS contending that the sheriff's sale was invalid as (1) being in violation of the automatic stay, (2) as having occurred notwithstanding that under the federal Real Estate Procedures Act ("RESPA") a qualified written request ("QWR") was directed to the lender and (3) as being a preferential transfer and/or fraudulent conveyance subject to avoidance under the Bankruptcy Code.

In his own defense, Debtor testified as to the various causes for the lack of success of his and his wife's many bankruptcy cases, all attributable to parties other than the Schlupps. His problems with the mortgage began when his mortgage was sold to IMC Mortgage Co. While he continued to make payments, he claims he never received a statement or payment book. After 1-1/2 years the mortgagee asked why he was making a partial payment. Upon investigation Debtor states that he first learned that there was a rate increase and was then directed to start paying at a different amount which he did beginning in November 1999. However, the mortgage company stopped accepting payments and commenced foreclosure. The first bankruptcy case was filed and he claims to have been unaware that the mortgage was sold, and accordingly payments were sent to the wrong address. In his second case, he claimed all payments to the Chapter 13 trustee and mortgagee were made. Again he stated he was unaware of a transfer of the mortgage and was unable to get his payments to the correct party.

Case four, he points out, was his first case, and the problems with this and the subsequent case he attributes to his counsel Diorio who he said made a number of

mistakes[5] causing the case to be dismissed, and merely recommending a refiling, i.e., case number 5. Notwithstanding this deflection of blame, he acknowledged that he and his wife did not make payments in cases 4 and 5, having accepted the recommendation of Diorio that he use the petitions to stay foreclosure and do nothing more.

While Buyers and SPS (together "Movants") seek different remedies, their grounds are the same. They contend that Debtor and his wife's use of the bankruptcy law to stay foreclosure of the Property for five years without any bona fide effort to make current payments under the mortgage and under a Chapter 13 plan evidences an abuse of this Court's processes. Moreover, as the Property has been sold to a third party, there remains no legal basis to cure the mortgage arrears as his Plan proposes to do.[6]

Debtor responds that Movants have no standing to seek relief, that the automatic stay has been violated so that the sheriff's sale is void and if not, he has a basis under applicable federal and state avoidance law to set it aside, all as set forth in the adversary proceeding which he states he must be given the opportunity to pursue. Absent a valid sale, he plans to cure the arrears under his Plan.

---

[5] First Diorio lost the file and his telephone number. Then he either told Debtor that the § 341 meeting was postponed (direct exam) or not to go (cross exam). The case was up for dismissal, and Diorio told him he need not go to the dismissal hearing but that a new petition would simply be filed.

[6] The Plan contemplates monthly payments of $1,200 for the entire length of the plan, not to be less than 36 months. While the plan is ambiguous about its length, at most it proposes to pay $72,000. SPS contends, but has not established, that the arrears prior to foreclosure were $200,000.

**DISCUSSION**

A. Standing[7]

The first argument that Debtor makes evidences the desperation that accompanies his defense of the Motions. His position requires very little discussion to dismiss. Relief from stay shall be granted upon request of a "party in interest." 11 U.S.C. § 362(d). Likewise the court may convert or dismiss a case upon request of a "party in interest." 11 U.S.C. § 1307. While party in interest is not defined by the Code, it certainly includes creditors. Rosyn Savings Bank v. Comcoach Corporation (In re Comcoach Corporation), 698 F.2d 571, 573-74 (2d Cir. 1983). Debtor argues that SPS is not a creditor because it contends it has foreclosed on the Property to satisfy its mortgage. He makes this argument notwithstanding that his bankruptcy has stayed it from realizing the proceeds of its mortgage lien on the Property because the sheriff will not complete the sale. He makes this argument notwithstanding his position in this case is that SPS is a creditor by reason of an invalid foreclosure which allows him to treat the mortgage debt under a Chapter 13 plan. Debtor is hard pressed to claim SPS is not a creditor and deny it the right to address its claim in this proceeding.

---

[7] Buyers also argue that Debtor has no standing himself to oppose relief from stay since the Property at issue having been sold at sheriff's sale deprives him of any interest that could become part of the bankruptcy estate. JP Morgan v. Rocco (In re Rocco), 319 B.R. 411 (Bankr. W.D. Pa. 2005); In re Davis, 281 B.R. 626, 633 (Bankr. W.D. Pa. 2002). Notably in these cases the deed had been recorded prior to bankruptcy, a step that did not occur here, leaving the debtor with legal title. Such a property interest would confer standing to defend these Motions although the Debtor's defenses to the Motions are so legally flawed that a serious question exists as to Debtor's compliance with Rule 9011 in asserting them.

While Buyers are not creditors, I disagree with Debtor that only a creditor may be a party in interest with standing to move for relief from stay. Twenty-five years ago in Administrator of Veterans' Affairs v. Sparkman (In re Sparkman), 9 B.R. 359 (Bankr. E.D. Pa. 1981), this Court considered and rejected an argument similar to the one made by the Debtor here. In that case, a mortgagee and the Veterans' Administration ("VA"), to whom the mortgagee had assigned its bid at a sheriff's sale, sought relief from stay to record the deed which had been signed by the sheriff but not yet recorded when the bankruptcy petition was filed. The debtor claimed that the mortgagee had no standing because he had assigned its bid to the VA. The Court concluded that the mortgagee had standing because it was required to cooperate with the VA in pursuing remedies on default of any VA-guaranteed mortgage. Moreover the remaining plaintiff, the VA, clearly had standing as the assignee of the bid at sheriff's sale and thus the complaint[8] could not be dismissed.

In re Village Rathskellar, Inc., 147 B.R. 665, 669 (Bankr. S.D.N.Y. 1992) also rejected the narrow view of standing advanced by Debtor and expressly distinguished Comcoach, that Debtor cites for the proposition that only a creditor has standing to pursue a motion for relief, by noting that it has been limited in its application to the facts at hand. In Comcoach a mortgage company sought relief from stay of the bankruptcy of its mortgagor's tenant. The court found that the mortgagee had no standing to seek relief to seek relief against the debtor tenant who was not a party to the foreclosure action. It reasoned that, as the mortgagee was not stayed by any bankruptcy of its mortgagor, it needed no relief

---

[8] It appears that relief was sought by way of complaint, not motion.

and could pursue its rights and against its borrower freely. The Rathskellar court held that where the movant has no other alternative route to the relief it seeks, it is a person aggrieved with standing to sue. 147 B.R. at 669. Likewise, in Brizendine v. Humboldt Express, Inc. (In re Brown Transport Truckload, Inc.), 118 B.R. 889 (Bankr. N.D. Ga. 1990), the court found that the debtor's competitor had standing to seek relief from stay although it held no claim against the debtor or the estate in order to file an action before the Public Service Commission to revoke the debtor's operating authority. The court reasoned that the mechanical application of Comcoach to find standing only for creditors would leave a party without recourse, "creating 'an anomalous situation where a party is subject to the stay but is unable to seek relief even if damage may result from its continuance.'" Id. at 893 (*quoting* 2 Collier on Bankruptcy ¶ 362.07 (15th ed. 1990)). In this case, Buyers are being stayed by this bankruptcy case from securing a deed to the Property for which they have paid over $400,000, and SPS is stayed from receiving the sale proceeds which have been paid to satisfy its mortgage lien. Relief from stay is the sole remedy to address these impediments to their state law rights. Debtor's standing argument is without merit.

### B. No Stay Violation

Debtor's second argument, i.e., that the sale is void because the automatic stay had previously been triggered by the filing of the petition, is similarly without merit. The evidence is clear. The sale occurred at 10:25 a.m.; the bankruptcy case was filed at 12:47 p.m. Debtor's argument that the stay attaches when the debtor leaves for or arrives at the courthouse is unsupported by the language of the Bankruptcy Code, the case law and

-9-

common sense. Section 362(a) states that "a petition <u>filed</u> under the Bankruptcy Code operates as a stay...". 11 U.S.C. § 362(a) (emphasis added). See <u>McLouth v. Advanta Mortgage Corp.</u>, 268 B.R. 244, 247 (Bankr. 2001) (plain language indicates Congress' intent that the stay take effect at the "moment of filing" rather than the day of filing). A petition is filed when it is placed in the actual or constructive possession of the Clerk.[9] <u>Beal Bank v. Brown</u>, 311 B.R. 721, 725 (Bankr. W.D. Pa. 2004). When there is a dispute about when precisely the petition was filed, the time stamp on the petition gives rise to a presumption that the petition was filed at the time and date so indicated. <u>Id.</u> Debtor does not dispute that the Clerk received possession of the petition at 12:47 p.m. but only that he was delayed in getting it to the Clerk. He has not rebutted the presumption of the time of filing nor provided any basis to deviate from this rule.[10] Thus, the stay is triggered when it is filed, not when steps

---

[9] Alternatively electronic transmission of a petition to the Electronic Filing System, consistent with the rules of court, together with a Notice of Electronic Filing from the court, constitutes filing of the document for all purposes. Exhibit A to Standing Order dated April 1, 2003, ¶ 3(a). As Debtor did not have an attorney file the petition for him, he did not avail himself of this alternative.

[10] The cases he cites are not remotely applicable. His case for the proposition that the filing occurs when the debtor leaves for the courthouse is <u>Houston v. Lack,</u> 487 U.S. 266, 108 S.Ct. 2379 (1988) in which the Supreme Court found that a prisoner seeking to appeal without counsel is unique in being unable to personally travel to the courthouse to see that his document is filed. Thus, it held that delivery of the notice to the prison authorities within the requisite period would be timely since the "jailer is in effect the clerk of the District Court within the meaning of Rule 37." <u>Id.</u> at 270-71, 108 S.Ct. at 2382. His case for the proposition that filing occurs when the litigant reaches the courthouse is <u>Freeman v. Giacomo Costa Fu Andrea</u>, 282 F.Supp. 525 (E.D. Pa. 1968). In that case the plaintiff's messenger sought to file a complaint on a Saturday and contacted the Deputy Clerk to meet him at the courthouse to receive it. While the messenger arrived in time to file a timely complaint (<u>i.e.</u>, before the plaintiff died), the Deputy Clerk arrived later and the complaint could not be time stamped and docketed until after the plaintiff died. Reasoning that the court was always open for the filing of a pleading which could have been accomplished if the messenger had depositing it in the after hours box when he arrived, the court fixed the filing time as of the
(continued...)

preliminary to filing such as leaving for the courthouse or arriving there occur. The chaos that would result from the uncertainty of the rule he espouses is apparent. In short, the bankruptcy filing this time was too little, too late.

### C. The Adversary Proceeding

Recognizing that he is left with the unalterable reality that the Property has been sold at a foreclosure sale, the Debtor now seeks to find a basis to challenge that sale in this Court. As that the Rooker/Feldman doctrine[11] limits his options, Debtor resorts to a strategy commonly utilized by his counsel in other cases where the bankruptcy petition has been too late to obstruct the sale. He commences an adversary proceeding claiming the sale can be avoided on bankruptcy or other still available grounds and argues that the court must await the trial of the adversary case to determine whether the plan is confirmable.[12] I have rejected

---

(...continued)
messenger's arrival at the courthouse. The court noted that this was a borderline case stretching the definition of filing to the utmost of its limits and was influenced by the assumption held by the parties for four years that the complaint was timely filed. Moreover, it noted a lack of prejudice to the defendant who merely lost a "recently discovered" technical defense. The court reached out for an equitable result, a latitude that is not warranted on these facts.

[11] This Court, as well as any other federal court other than the United States Supreme Court, is precluded from disturbing a decision on the merits rendered by a state court regardless of whether said decision has yet been reduced to a formal docketed judgment. See District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 478, 103 S.Ct. 1303, 1313 (1983) (federal court could not disturb a prior state court decision "[a]lthough 'no entry was placed by the Clerk in the file, on a docket, or in a judgment roll'"). Thus, in order to avoid the binding effect of the foreclosure judgment, Debtor must advance a claim other than one that was or could have been raised in defense of the judgment.

[12] These adversary proceedings have become the hallmark of Debtor's counsel who, as I have noted before, believes in the notion that his best defense is an offense, if for no other reason that it obstructs the creditor and delay often brings settlement. That speaks volumes about the strength of the available defense. Moreover the recurrent and formulaic strategy employed has
(continued...)

that contention on innumerable occasions, requiring the debtor to come forward to establish a possibility that he could prevail in the litigation to warrant continuation of the stay and/or case. To do otherwise is to allow a conclusory pleading to delay the exercise of a creditor's rights. In In re Rocco, 319 B.R. 411 (Bankr. W.D. Pa. 2005), the debtors had also lost their property through a sheriff sale and stayed ejectment by filing a bankruptcy case, their second. The purchaser of the property sought relief from stay. Pending in the bankruptcy was an adversary proceeding asserting preference and fraudulent transfers as well as non-bankruptcy causes of action for violations of truth-in-lending law, unfair practices and civil conspiracy. The debtors argued that the adversary case provided adequate protection to the creditor and that they needed the property to reorganize. The court found that their preference and fraudulent conveyance actions were without basis and the non-bankruptcy causes of action had not been raised before in the state court and could not now be raised to set aside a complete, regularly-conducted, non-collusive foreclosure sale. It also rejected the debtors' argument that litigation, if successful, could defeat the mortgagee's claim and as such provided adequate protection. As the court stated, "[e]ven absent consideration of the merits of the claims, the time requirements to conclude this adversary must be considered." Id. at 419.

In this case, Debtor's adversary seeks to avoid the foreclosure sale as a preference and/or a fraudulent conveyance. Debtor brazenly states that the transfer (i.e., Buyers' purchase of the Property at the sheriff's sale) "meets most if not all the requirements for

---

(...continued)
undermined the credibility of his cases.

a preference." Debtor's Memo at 6. He then attempts to distinguish the instant case from my opinion in In re Rambo, 297 B.R. 418 (Bankr. E.D. Pa. 2003), where I concluded that a Chapter 7 trustee would not administer the asset.[13] He notes that Ms. Chanin's testified that the Property value was $500,000-$570,000 as compared to SPS's secured claim of $360,000. On that basis Debtor claims that SPS has received a windfall, and the sale can be set aside since a trustee would administer this asset in a Chapter 7 case, the test I articulated in Rambo.

I agree that this case is different than Rambo but hardly in a favorable way for Debtor. Rambo involved a purchase at sheriff sale by the mortgagee, a creditor, not a third party as here. Thus when Debtor says that the sale involved most, if not all of the elements of a preference, he conveniently ignores the requirement that the transfer be "to or for the benefit of a creditor" and on account of an antecedent debt. 11 U.S.C. § 547(b)(1), (b)(2).[14] The creditor is SPS (the entity that Debtor claimed had no standing) and there is no evidence that it received more than it would in a liquidation. The transfer sought to be avoided is the sale but SPS did not acquire the Property, Buyers did. Indeed, but for the subsequent bankruptcy filing SPS would have merely been paid the amount of its debt in order to clear title free of its lien. In short, a sheriff sale of property purchased by a third party cannot be a preference, an opinion I already voiced in Rambo. Id. at 428 n.13.

---

[13] As the preference analysis is whether the creditor received more than it would have in a hypothetical liquidation under Chapter 7, the valuation must be based on an analysis of what the hypothetical trustee would have received for it, assuming that the trustee would have administered the property for sale. Id.

[14] Buyers purchased the Property for $402,000 which they valued at the hearing as $500,000 to $570,000 and Debtor valued on the schedules as of the petition date as $450,000. However, these values are irrelevant and I make no findings with respect to them as they prove nothing. As noted above, Debtor's preference analysis which equates Buyers with SPS is fatally flawed.

With respect to Debtor's alternative claim seeking to set aside the transfer as a fraudulent conveyance, Debtor appears to recognize that the United States Supreme Court's ruling in BFP v. Resolution Trust Co., 511 U.S. 531 (1994) "may confine the application of 11 U.S.C. § 548 to irregular sheriff's sales."  However, he holds open the possibility that the Pennsylvania Supreme Court might construe the Pennsylvania fraudulent conveyance statute, 12 Pa. C.S. § 5105, differently, citing no authority despite almost identical language and statutory objectives.  Debtor's Memo at 6.  Such a thin reed will not support this case, nor will Debtor's contention that the sheriff's sale was irregular because it was conducted in violation of the stay.  While sincerely doubting that such was the irregularity contemplated in BFP, I have found that the sale did not violate the stay.

Finally Debtor seeks to set aside the sale as violative of the Real Estate Procedures Act, 12 U.S.C. § 2605(e) ("RESPA") because a "QWR" was directed to the lender.  An attachment to the Complaint evidences a letter dated April 6, 2005 to IMC Mortgage, making a "qualified written request" under the Federal Servicer Act of RESPA, seeking certain information and noting that failure to provide such information would be cause to seek damages, costs and legal fees.  According to the letter, IMC had twenty days to acknowledge the request.  The record is unclear whether it was received.  When questioned about the letter, Debtor said he had never seen a copy but he did not think it was answered.  On this basis, Debtor claims that the sheriff's sale can be set aside.

In support Debtor cites (without providing any copies) certain orders issued by the District Court allegedly staying sheriff's sales on the ground that lenders failed to respond

to QWR's. Neither those orders as described[15] nor the cases cited provide support for the extraordinary remedy Debtor seeks here, i.e., avoidance of a validly conducted sale to a innocent third party. As Debtor has failed to provide me with any authority for the remedy he seeks, I can only conclude that at best the law might have allowed him to stay the sale or to be awarded damages for this alleged violation of RESPA.[16]

For the reasons above, the Motions are granted. Debtor has presented no grounds to use this Chapter 13 proceeding to further delay the exercise of state law rights by the Buyers and SPS. The serial filings of Mr. and Mrs. Sclupp have afforded them more than sufficient opportunity to address their mortgage obligations. Their failure to do so in five prior attempts over five years cannot be attributable to anyone but themselves. Moreover, as there is no purpose for this Chapter 13 case which is intended to deal solely with the obligations arising under a mortgage that has been foreclosed upon, this case (and the related adversary case no. 05-0467) will be dismissed. Given the serial nature of the filings made by Debtor

---

[15] I respectfully reject Debtor's statement that this court is "obliged to, or at least should in the ordinary course, follow the precedent of the District Court which reviews its decisions," since there is no precedent that binds me here. More significantly, I find no colorable basis for Debtor's statement that where a lender has proceeded with a foreclosure sale with a QWR pending I am required to strike the sale "on the basis of controlling authority from this District." Debtor's Memo at 4.

[16] Johnstone v. Bank of America, N.A., 173 F.Supp. 2d 809 (N.D. Ill. 2001) imposes an award of damages for commencing foreclosure without responding to a QWR. Cardiello v. Money Store, 2001 WL 604007, at *9 (S.D.N.Y. June 1, 2001) states that if a defendant fails to respond to a qualified inquiry in the manner prescribed by RESPA § 2605, he may be liable for damages. Notably Diorio sought a stay on the eve of foreclosure at which time he either raised the issue and was rejected or failed to bring it to the state court's attention. As noted above, the use of an adversary proceeding to address an issue that should have been raised in the State Court is an improper collateral attack on the state law proceedings.

and his spouse, the dismissal will be with a bar against refiling without leave of Court.

An Order consistent with this Memorandum Opinion shall issue.


                                         DIANE WEISS SIGMUND
                                         Chief U.S. Bankruptcy Judge

Dated:    September 2, 2005

# UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 13 |
| | : | |
| DONALD N. SCHLUPP, | : | Bankruptcy No. 05-16879DWS |
| | : | |
| Debtor. | : | |

# ORDER

**AND NOW**, this 2nd day of September 2005, upon consideration of (1) the Motion for Relief from Automatic Stay filed by Mira P. Chanin and Leonid Rubarich ("Stay Motion") and (2) the Motion to Dismiss of Select Portfolio Servicing, Inc. ("Dismissal Motion"), after notice and an evidentiary hearing, and for the reasons stated in the accompanying Memorandum Opinion;

It is hereby **ORDERED** and **DECREED** that the Dismissal Motion is **GRANTED**.[1] This case is dismissed with a bar against Debtor and Mrs. Schlupp filing for further bankruptcy relief without leave of this Court.

DIANE WEISS SIGMUND
Chief U.S. Bankruptcy Judge

---

[1] As this case and the related adversary (case no. 05-0467) are dismissed, stay relief is no longer necessary.

<u>In re Donald N. Schlupp - Bankruptcy No. 05-16879DWS</u>

<u>Copies to</u>:

David A. Scholl, Esquire
Regional Bankruptcy Center
Law Office of David A. Scholl
#6 St. Albans Avenue
Newtown, PA 19073

Leslie J. Rase, Esquire
Martha E. Von Rosenstiel, P.C.
649 South Avenue, Unit 7
P.O. Box 307
Secane, PA 19018

Steven K. Eisenberg, Esquire
STERN AND STRECHO
410 Benjamin Fox Pavilion
Jenkintown, PA 19046

William C. Miller, Esquire
Standing Chapter 13 Trustee
P. O. Box 40119
Philadelphia, PA 19106-0119

Dave P. Adams, Esquire
Office of the U.S. Trustee
833 Chestnut Street
Suite 500
Philadelphia, PA 19107